All righty, gentlemen, when you're ready, the next final case for argument this morning is 14-50668, Alvarado v. Mine Service, Limited. Good morning, Norris. Hello. May it please the Court, my name is Robert Lee, Lee and Brazile. I have a small labor and employment firm, 90% of my practice is doing contingency plaintiff employment cases, some defense work and some arbitrated work, but mostly that's what I do. I was involved in obtaining this case from Mr. Alvarado after it was at the EEOC stage, and we, after the 180-day period expired, we went ahead and requested from the EEOC a right to sue. And the right to sue that we received right around June 13, 2013, had numerous deficiencies to it. I don't know if the Court wants a copy of it right here. No, it's in the record excerpt. It was all messed up. It was? It's all messed up. The main fact, I've practiced for over 20 years in employment law, and I'd never seen a EEOC charge that didn't have any signature on it, date, and it was all screwed up on ADA and all this other stuff. And so I immediately had my staff contact the EEOC and say, what's the deal with this? And my staff was told specifically that it was a mistake, that there was a new clerk that was involved in sending that and should have done that, that they have to essentially get that taken up the chain to have it signed off on it and have one sent to us. A couple of weeks went by and nothing happened, so I had my staff contact again the EEOC, and about a week later, we got a right to sue from the EEOC, approximately about four weeks afterwards, related to this matter. The issue was calendared, as we always do, for the 90-day period for the statute of limitations for that. Let's go back to the first notice for a minute. I don't want to interrupt your train of thought because it's helpful that you're giving us the background. But that first notice, which everyone admits didn't have everything in it that it should have, it did notify you, though, that from your receipt of it, that you had the 180 days. Is that right? Well, 90 days. Excuse me, 90 days. Yeah. I mean, the first notice did mention 90 days. It's the normal form that they always use. And it did mention that it was 90 days in that particular document. But, again, I had no reason to believe that that had any merit whatsoever, especially after the phone call we had, and then obviously . . . Okay. And you can continue with what you were saying. I just wanted to . . . Yes, Your Honor. . . . to make sure that the first notice did warn you of the 90 days. It did. It also had a box check for 80 days, and we had a right to sue under the 80-day as well for 90 days. The second letter, the July 8th letter, when you asked for the corrected letter, that also said you had 90 days to sue from the date of that second July 8th, correct? Yes. Yeah. That's the EEOC telling you, you can sue in federal or state court within 90 days of your receipt of this notice, which is dated July 8th. So even if the district court below was correct that the first notice actually started the clock running, isn't . . . then what the EEOC tells you in the second notice is wrong, right? Because you actually didn't have 90 days from the date of the second notice. If the first notice is correct, is actual notice that we have to abide by, yes, the second notice would be incorrect. Incorrect representation from the EEOC about how long you had to sue, file a sue. Yes, Your Honor. And so, once we received that right to sue from the EEOC, it was calendared. There's also notes in the record that we showed that the EEOC themselves demonstrated that they . . . that it was sent . . . the second notice was sent to us and it's corrected. If you saw the notes in the . . . specifically mentioned by the EEOC investigator in that particular matter, it said a correct copy of the signature was mailed out on July 8th, 2013, and the . . . and the case was closed at that particular point in time. The lawsuit was filed within that time period, 86 days from that second right to sue. We went through all the discovery in the case and then this issue was brought up in summary judgment thereafter. When the district court looked at the issue related to that, they stated that our evidence was, I guess, insufficient to show the authorization was improper and they didn't go into the issue of the equitable tolling at all related to this particular matter. The first issue related to the . . . if you look at the EEOC regulations, yes, it's not . . . a signature is not required under this case law, it says signature alone is not required, but they still have to have authority through the proper directors as well as any designee they may have, and the records, at least related to the notes in the EEOC, demonstrate that's the case. The court said that our affidavit from our assistant related to what we were told was hearsay and I'll leave that up to the court to make the determination, but it's not hearsay as it relates to any of the issues related to equitable tolling, that's for sure. It's clear what we were told related to that from the EEOC and what information we got from the EEOC . . . Well, you could have, you know, they could have sent it to the wrong person. They could have sent Joe Smith's right to sue letter with the name of Alvarado on it because they also misstated how long the complaint had been pending and they misstated age discrimination, which you didn't plead, right? That's correct, Your Honor. So it could have been the wrong person. There . . . who knows how many unthinkable mistakes could have been made on the charge itself, but . . . So you're saying on that statement, your paralegal said, the statement from the EEOC, that while it can't be used for the truth of what the EEOC said, what was the valid letter or not, that it can be used for the non-hearsay purpose of why your office did what it did. Correct, Your Honor. And so the case, though, the main case that was cited by the court in this matter was the Love v. Harsh Investments case, which was an unpublished Ninth Circuit case. And that case specifically didn't deal with this particular issue. It's a pro se plaintiff that essentially was arguing that he didn't have to abide by the right to sue because it wasn't signed, and never filed a case within 90 days, and there wasn't any second right to sue that was issued, and there was no reason given by that pro se plaintiff as to why he did not bring the case, except for I couldn't find a lawyer in time. The other cases that were essentially cited by the court, mostly the Brown v. Mead case and other cases, involved cases where after a right to sue was issued, there's no question the right to sue was, or maybe a question of whether proper authorization, some are and some weren't. But at the end of the day, nothing was done within that 90-day period after receiving that by the initial individual that had the case, and to even deal with their rights. And what happened in a second right to sue, in some cases, in Brown v. Mead, I believe it was three years later, the EEOC decided that we made a mistake and we're going to give you another right to sue, and the court basically said, no, you can't do that. And in this court, all the courts, as they dealt with the issue of whether the EEOC can go back into a case and issue another right to sue, have made distinctions in those cases between those cases that were within the 90-day statute of limitations period and those that were outside the 90-day statute of limitations period. Well, those cases say whether the EEOC can reopen the case, as I read them, whether a second letter reopens the case. What's the evidence here as to when the case was closed in the EEOC? The note from the EEOC says it was closed on July 8, 2013, the exact same day they sent the second right to sue to us. So, but the cases . . . There was nothing to reopen because it had never been closed until the second letter was sent. That's true, Your Honor. But I guess my distinction is that this is very analogous to . . . No, that helps you. I'm trying to say . . . Right. They're analogous to all those cases that we have that show that there are things that can happen within that 90-day period that are very important that allows the EEOC to come back in, go back into the case, and issue another right to sue in those cases. But if it's outside that 90-day period, there's no rights such as that exist in these particular . . . in those cases. The court has found these finalities necessary. Yes. This is sort of an extraneous question, but are you still in contact with Mr. Alvarado? He's still my client. I haven't talked to him in a while, so . . . Yeah, well, one might have . . . you might confirm to the court if he's not available anymore. That's all I have to say. No, I . . . Because this has been pending for quite a long time now, so I just want to make sure he hasn't disappeared. I have no reason to believe that, Your Honor. Yeah, I understand. But you'll let us know if he did, because we don't want to have to do extra work. Yes, Your Honor. Thank you. So, I think that if this Court were even to find, though, that somehow the authorization process in this particular case was improper, I think that the Grange v. Abrams case with the Fifth Circuit in 2011 is extremely important to this particular matter. And the Court, although it cited that, the District Court cited that, they didn't mention within that case the issue of equitable tolling applying with that number one issue being misleading . . . being misled by the EEOC. There was no discussion at all about the issue of being misled by the EEOC in that process. And it's clear in the Grange case, in that case, there was a case where an attorney essentially was filed his charge in the wrong area, and he was given . . . he didn't sit at the EEOC, he was sent to a different entity. And the Court found it was a mistake, essentially, that was essentially perpetuated by situations where he thought, essentially, he was talking to the EEOC. In our case, it's clear that we were misled by the EEOC when we were told those things by their particular clerk, and we were given a second right to sue. And I think it's really important, the language within the Grange, when it talks about, we are more forgiving when a claimant or attorney is exercised due diligence in pursuing her rights. We have considered it relevant whether the plaintiff took some steps recognized as important by the statute before the end of the limitations period. We were diligent from the very beginning talking about this right to sue and what's going on with the right to sue from the next day once we received it. You do have a compelling case for tolling, but how do you get around the abuse of discretion standard on that issue? I don't believe it's an abuse of discretion standard, it's a de novo standard that we have mentioned within our pleadings. De novo on if there's an issue of statutory interpretation or something like that, but as to just the general exercise of discretion is tolling the fair thing to do in this case, which is really what an equitable tolling issue is, that is abuse of discretion. Well, we didn't really get a chance to testify about all the circumstances related to that. It's not like this case has gone through an entire process related to those circumstances. We filed a response in response to a summary judgment motion, and there was no . . . Given that the log says corrected one sent in July, could there be a dispute on which you'd want . . . maybe someone from the EEOC would testify about how these two got issued and which one was the correct letter? I know that's typically an issue that's decided by the court, but under these unusual circumstances, could there be a fact issue there? I think that the record clearly would demonstrate that even if the counsel believes somehow that first right to submit either, I think it's possible that could be an issue that could go before the court. Obviously, the EEOC wouldn't want to do that, and we wouldn't want to have to put them on if we didn't have to, put them on related to it, but if it becomes an issue, yes, I think it's definitely a fact issue related to those particular issues. They could also, I guess, argue issues related to whether or not our assistant was telling the truth when he talked to certain people as well. I guess they could potentially make that up, but I don't . . . right now, there's no disputed testimony related to that aspect. The testimony is what it is, and I don't . . . there wasn't any disputed testimony related to what exactly occurred related to those particular matters within at least the summary judgment context. In your reply brief, you properly responded to the citation of the Santini case, which is Eleventh Circuit, so it's not binding on us. Do you agree that it's the closest case on point in terms of the facts? I don't know of one that's closer, but that's why I'm asking you, and whether or not it is, tell us why we wouldn't find that decision persuasive. Well, two issues there. On the Santini case, you didn't have an issue related to whether or not the authorization was proper or not. In that case, the only issue was whether it was dated or not, and there's . . . I'm not aware of any situation that says because I have a date on it, that that somehow does not make it a proper authorization. When you receive it is when you receive it. The second issue is they did not follow the precedent of the Fifth Circuit from 2011, where it actually took into account the EEOC as being a potential factor misleading the individual. This Court has already stated that that's a potential factor in the tolling issue, and that was not really something that the Eleventh Circuit took into account when they made their determination. So I think there's different law in this circuit related to those particular matters. I agree that there . . . in my viewpoint, there are some issues related to whether or not that Court should have ruled in a different way, but that's the precedent in the Eleventh Circuit related to those particular aspects. But those issues weren't really addressed from a tolling perspective, as far as that goes. And authorization was not an issue. Your Honor, in any of the other cases that we have in this particular matter, all the other cases that were cited in this particular case were INS cases that had nothing to do whether there was proper authorization or not, and the question was whether or not the person could sign it or not, who's actually signed it. We don't believe there's any of these cases actually fall directly on a point related to what happens in the Fifth Circuit because of the circumstances in our case. We actually were diligent at the very beginning in this particular matter, and we'd like to take all that into account. Okay. You have time for rebuttal. All right. Mr. Pirkle. May it please the Court, opposing counsel, I'm Neal Pirkle for the Appellee Mind Service. And this is a case that this Court should affirm because the first right-to-sue letter received by the plaintiff met the statutory requirements. And by meeting the statutory requirements, it started the right . . . the 90-day statute . . . Let me pose a . . . Yes, ma'am. . . . a little tiny hypothetical to you. Suppose you got a check from the U.S. Treasury with your name on it, and it said, you know, in payment . . . it had no information on it. It just said, U.S. Treasury, and it's Mr. Pirkle, and it says, Settlement of Claim Number blank, blank, blank, and it has the date on it. Would you cash that check? No, ma'am. Well, you know, they get a notice to sue, and the notice to sue, it doesn't have the signature. Okay, that's not required, but it says this claim has been pending for less than 180 days. It's been pending for two years. And then it says . . . and by the way, you can sue on your age discrimination. There's no age discrimination here. A very reasonable person could say, does this pertain to my client? Yes, ma'am. That's a good question. And they raised that question with the EEOC? Let's look at the facts. Mr. Alvarado was represented by a lawyer. The day before they get this first notice of right to sue letter, they request the right to sue letter. They get the request. The next day, they get the notice. Therefore, we look at the four statutory requirements of a right to sue letter. Let me pose another hypothetical, because you seem to . . . that raises the issue of whether those four statutory requirements are the end-all, be-all. Here it said Title VII and age discrimination, and everyone agrees the age discrimination was unnecessary. Clear, clear. Let me ask, what if it said age discrimination and didn't mention Title VII, which is what everyone agrees is his real claim? Would your position . . . what would your position be?  Title VII . . . Even though . . . but that's not . . . does the . . . do those four statutory requirements say the precise, exact claim must be mentioned? If we look at the language used in the first right to sue letter and the second right to sue letter, it is identical. This is a form letter that the government sends out that says you have your right to sue. And if we look at the four requirements, they are all there. And Congress has set this 90-day statute of limitations for a purpose, and that is to keep these claims moving. And when we get this . . . Well, that had already been abrogated, because they sat on it for two years. That's right, but Congress can't control the speed of the EEOC. They can't control the deadlines to file a lawsuit, and it's 90 days. And as the . . . it's both the Ninth and Eleventh Circuit . . . the Ninth Circuit has said in the Love case that no signature is required, because it's not statutorily required. The Santini case is a case out of the Eleventh Circuit where that the letter was not dated, and the associate at the law firm called and said, hey, can I have a dated letter? And the EEOC, just like our case, sent out a dated letter. But the court in the Eleventh Circuit said, we're going to go with that the EEOC was correcting a technical defect, and we have to look at, can the EEOC even issue the second letter? And as this court has held, the only time the EEOC can issue a second letter is when, while the 90 days are still open, they go to both parties and they give them notice. We're putting you on notice that we are going to reconsider this. As I read it, that's when they're reopening a closed case. How do you deal with the evidence here that I don't think you had in the other case? And forget the telephone conversation. The evidence that the EEOC termed the second letter in a log the corrected letter, and that it didn't close its administrative case until that second letter issued in July. I mean, it seems to me a lot of the case on this area says the EEOC knows when, which of its notices are the correct ones. I understand your question, but I don't think it matters whether the EEOC has closed their case. They've sent out their notice of right to sue. The defendant gets it, the plaintiff gets it. Once they get it, the 90 days starts to run. If the EEOC, whether they administratively close their case internally, or whether they don't close their case, for them to reconsider that and to issue a new right to sue letter with a 90 day statute of limitations, they have to put the plaintiff and the defendant on notice. And if they don't, they can't issue a second letter. I believe it's the Gonzalez case in which this court has done the complete analysis of that situation. Assuming that everything that you just said is so, and I'm not indicating whether we agree with you or not, but assuming all of that is so, you still have a lawyer and his staff in an office who receive this second letter that's dated and that says you have 90 days from now or from the receipt of it, why wouldn't that be a compelling reason to grant equitable tolling? In other words, why wouldn't the reasonable attorney conclude from that that this is something valid that I can rely on, particularly given the substantial flaws in the first letter? If you look at Judge Smith's opinion, which I was trying to get you all the record side, but it's on page five of his opinion, he brings up a very good point. We filed our motion for summary judgment on basically three grounds. The primary, primarily, the main ground was this, okay? They respond, the plaintiff never brings up the doctrine of equitable tolling. Judge Smith, sua sponte, he brings up the doctrine of equitable tolling. He takes the facts. He correctly holds that the affidavit was hearsay. He then applies the facts to the law, and he even notes, as this court has said, that the only applicable area that could apply is if the EEOC misled the plaintiff. And he does a thorough analysis and does his analysis, and he didn't abuse his discretion. Did he note that the second letter has that 90-day notice, though? I don't know if he specifically said that, but I think he said in his opinion it has the same notification. If you take the two letters and put them side by side, they're the same letters. It's just they've checked two boxes. Let me ask you this. Looking at the tolling, one of the factors, if there's some plausible basis for tolling, the court is supposed to look at prejudice to the defendant. Yes, sir. Here, assuming the first letter gives the operative statute of limitations, I think you're 20 days late, something like that by my calculation. Yes, sir. How did that 20 days prejudice you? Well, first of all, we being the defendants never got to put anything in the record to show that we were prejudiced because the plaintiff didn't raise it. I understand, but what would you tell us now? It's the same theory. This is a discrimination case. Witnesses move, they disappear, they leave. You lose evidence as it goes. But if you look at the analysis, you don't even have to get to the prejudicial question because you first have to decide, is this a case where that equitable tolling could apply? Then the courts have said, then we might look at the prejudicial effect. And so we don't get there. Well, now, his argument is that the affidavit of their paralegal suffices to show what the EEOC misled them by saying, oh, my goodness, we made a mistake, we'll correct it. There is no evidence, no credible evidence in the record of the EEOC misleading them. That affidavit, we objected it was hearsay. It is hearsay. But it's hearsay as to the truth of what the EEOC. So on the first issue of which letter is the real letter, I agree that shouldn't be considered. Judge Smith was correct about that. But on the issue of why plaintiff's counsel did what he did and what they relied on, that's not the truth of the matter isn't at issue there. So why isn't it admissible for why they acted the way they did? Even if it is admissible, which we maintain it is not. Well, explain to me why it's not for that limited purpose. Well, I guess it could theoretically put them on notice of what they were thinking. And so it could be admissible for that sole purpose. But the problem with that argument is if we look at the law, the law is, and we're charged with knowing the law, the law is the EEOC cannot issue a second right to sue letter. If we begin to do this, this idea is going to encourage not only plaintiffs, it's going to encourage defendants. If this is the law, the next case I get like this, I'm going to get my right to sue letter and I'm going to look for a technical mistake or a clerical mistake in it, and then I'm going to go to the district court and say, court, you have no jurisdiction. But this isn't a case where they're hiding, I mean, the day they got the letter, they called and being vigilant, they said, we want to make sure no one raises questions about this letter, let's get it right. This isn't someone who is ignoring the case, your typical case where people find themselves barred by a statute. This is like the defense lawyer who is questioning whether my answer date is today or tomorrow. What do you do? You file your lawsuit. If you look at these cases of . . . When I was in the district court, quite a few people called the court and asked, which is basically what they did, call the case manager and say, when's my deadline? But if I call the clerk and I say, and the clerk gives me bad information, it's not the clerk's mistake, it's my mistake. And so I can't rely, I have to know what the record is. Depends whose court you're in. Well, that is true. With a good trial judge, that's true, Your Honor. But if you look at the cases where that due diligence is exercised, and he cites, I believe it was the Granger case he talks about. In the Granger case, the due diligence is they had already filed somewhere. They had filed, and it's not a lawsuit. This is the EEOC complaint. But the due diligence is go file your lawsuit. That's the key. And one other thing that two sister courts of this court have done, and I'm completely diverged from the order I wanted to do this, but both the Sixth Circuit in Ball v. Abbott and the Eleventh Circuit in Santini have said actual knowledge of right to sue destroys the basis for equitable tolling. And that first letter, it meets the statutory requirements. You go, there's four requirements, it meets them. We then move to the next step is whose burden is it to establish equitable tolling applies? And it's the burden on the plaintiff. The plaintiff didn't raise it to the trial court. The trial court, sua sponte, raised this issue, did a complete analysis, and reached a conclusion. Therefore, there is no abuse of discretion there. Now, there are a couple other points I would like to make. If we look at the ---- You can't really show prejudice, can you? I have. There's nothing in the record to show prejudice. No, ma'am, because we had no opportunity to put anything in. Well, no, it's not just a question of opportunity, because at the most they filed EEOC sat on the thing for two years, and then at the most they filed 30 days late. That's correct. But in our analysis, you don't get to the prejudice step until you do, does this equitable tolling even apply, and it doesn't apply. This is sort of the flip side of prejudice because these are unusually detailed allegations about what was happening. Usually, you have a lot more sketchy claim on the part of a plaintiff, and you can say, well, there's no prejudice. The equities about inequitable tolling sort of weigh with the defendant because the plaintiff was sitting on his rights, but here the plaintiff wasn't sitting on his rights, and you have a series of pretty detailed factual allegations that don't sound too good. Well, one of the deals about the series of detailed allegations, and this is not in the record because it really, this is a true he said, she said. Mr. Alvarado's version of the facts are not the same as the defendant's. This is your true EEOC, your true discrimination case where you have two different, you know, there's discussions of a noose. Well, there's a version of the noose that the noose is this big, and there's a discussion of the noose that it's this big. Well, I'm not even talking about the noose. That's, I'm talking about the other parts of it. Well, with regard to why Mr. Alvarado was fired, if you look, it is, he was fired in our opinion because he was the one stirring up all the other employees. And so this is a rule mine deal where that we work, our employees work very hard, very 12-hour days, and they change. They change jobs. And, you know, while we have nothing in the record that shows that we were prejudiced, every little bit, you know, hurts us. And if we are to go to this idea, it starts a slippery slope that just allows the EEOC to issue right-to-sue letters that they're not authorized to and encourages both plaintiffs and defendants to look for technical difficulties to either say, I need a new statute of limitations, or this trial court has no jurisdiction. And either way, it erodes the 90-day limitation set by Congress. I see you're concerned if people are getting the first letter, 90 days pass, and then on the 100th day they say, oh, boy, we're in trouble. Let's find something in this letter that's a problem. Here they ask for the corrected letter the day of, and clearly within the 90 days because it issued about, what, two weeks after the original notice. So it's not a situation where they realize they screwed up and then after the fact try to find a defect. It's clear the plaintiff's lawyer initially, taking a cautious approach, said I want to get my ducks in a row, let's get an accurate letter. Right, but the problem is the EEOC, we can argue, I can argue with the appellate's counsel, I can argue with everyone about what we want to call the mistakes in that EEOC letter. But irrespective of the mistakes, there's only four things required for a notice of right to sue letter. All four items are there. And so if we start this, the EEOC only has authority to issue one right to sue letter, and once they do, if they issue another one, they can only do it under one procedure. And why shouldn't we defer to them on which of the two is the correct one? Because the EEOC is not the party who is, I think it's called Chevron deference, and Chevron deference is given to a group when they are supposed to interpret how they act. Well, here the statute of limitations is clear. It's in the United States Code. It's 90 days. And the EEOC has no ability to change that or interpret that. Congress made it clear. It's 90 days. And I believe. Congress also specified the contents of the notice to sue. Yes, ma'am. And so the EEOC, it's the same. There's a case in which, and let me get the name of that. It's the, I believe it's the Brown v. Meade Corporation case, which is a Sixth Circuit case. And what's important is the EEOC shows up and they say, King's X, we didn't have the authority to issue that first letter. And this is a Sixth Circuit case, 646, Fed Second, 1163. And they said, King's X. The EEOC shows up and says, we didn't have authority to issue that first letter. But that first letter, as the court determined when you get a valid right to sue letter, you can't issue another right to sue letter because you didn't jump through the hoops to reconsider. And I know the Sixth Circuit is not binding precedent on this court, but their analysis is very good. Because they say, the EEOC, once they issue that first letter, if it's valid, which to be valid, you have to jump through four hoops. And once you jump through those hoops, you're there. And so when we look at the Meade case, it is very good for my position. Further, if you look at the Fifth Circuit case, Harris v. Tunica, in which a legal assistant miscalendored the data answer. And this court said, those are not the rare and exceptional circumstances in which we are going to allow equitable tolling. And again, the burden is on the plaintiff to rebut the presumption of regularity that the first letter was not valid. And they don't. There's nothing in the record. I would also like to make one more point about the record, and I think this was a technical mistake. In the appellant's record excerpts, they inadvertently inserted the affidavit of Maria Ruiz in the certified EEOC file. And if you look at y'all's, at the record at page 317, the table of contents will make clear from their motion for summary judgment that that affidavit is not part of the EEOC file. And one other thing about the EEOC file, when you see that notice about sent the correct letter, there is nothing. None of the parties get that until after the fact. So there is nothing there that is a representation by the EEOC. I've got eight seconds left. I think I'm done with the other questions. Thank you. Thank you. Okay, Mr. Lee. I think the court mentioned earlier about the issue of prejudice. As far as I know, I have no reason to dispute this, the second right to sue letter would have been sent to the defendant as well as to the plaintiff. And they would have known at that point in time that within the 90-day period for sure that this other date had been put forth. I have the Brown v. Meade case, which you just mentioned here. Again, that was a case where the EEOC waited three years to bring that case. And when the plaintiff initially got the right to sue in that particular case, did not file suit within 90 days, and had no reason to believe that the initial right to sue was a problem in any way, shape, or form. Do I need any questions that the judges may have related to this matter of me? Thank you. You gave a very thorough argument to begin with. Thank you, Your Honor. All right, sir. Thank you very much.